## Woods, et al. v. Hensley, et al.

(Decided November 13, 1923.)

### Appeal from Leslie Circuit Court.

1. Executors and Administrators—Settlement Not Attacked for 30 Years Presumed Regular.—Where intestate died leaving a widow and three children, but administrator paid most of the personal property over to widow, and that settlement remained unattacked for more than 30 years, it will be presumed that she acquired the ownership thereof.

2. Records—Deed Not Affected by Adding Grantee on Record.— Where a wife paid the consideration for a deed, and, though there was no evidence of fraud, the deed was taken in the name of her husband, but, when the deed was recorded a number of years later, wife's name was also inserted as grantee, but as to how that came about was not shown, held, that the deed was not affected by the erroneous recording, and husband's heirs were owners of the entire tract.

LEWIS & LEWIS for appellants.

J. M. BICKNELL and JOHN L. DIXON for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Emery Hensley died prior to the year 1890, his widow, America, and three children surviving him. His brother-in-law, Farris Roberts, qualified as administrator of his estate, and as such made settlement with the county court.

It appears that most of the personalty, amounting to over $1,300.00 in value, was paid to the widow and used as her own funds. It is not indicated why, as she held no fiducial relation to the children, but the settlement has never been attacked, and is not questioned in this suit. Under such circumstances, after a lapse of more than thirty years, it will be presumed that she acquired the ownership thereof.

Two or three years after the death of her first husband she married John Gay and several children were born of this union. On March 5, 1895, her brother, William Roberts, sold and conveyed to her husband, or to her and her hosband jointly, the tract of land in controversy, and the deed was recorded on the 22nd day of May, 1903, and on the record purports to be a joint deed to John Gay and America Gay.

John Gay died about the year 1905, and America Gay some time in 1916. Some four or five years after her death this suit was filed by the heirs of her first husband claiming that the consideration paid for this land was a part of their father's estate and seeking to have the deed declared a trust in their favor. The heirs of John Gay contested this and claimed that the purchase money was furnished by their father and the original deed executed to him, and that thereby they were entitled to the entire tract of land.

The trial court held that the entire consideration was paid by America Gay with her money and adjudged the land to belong to her, and that it should be divided among all her children. The Gay heirs appeal.

As is usual in such cases the evidence is conflicting. William Roberts, the vendor, his wife and son, testify that the consideration was paid by America Gay out of the funds received from the estate of her first husband. America Gay herself made a written statement to that effect just before her death, and there is other evidence corroborating this. As suggested, the administrator's settlement shows America Gay received funds from her first husband's estate; also there is testimony that John Gay had no money or property except an interest in his father's estate, which he did not sell until 1903, eight years subsequent to the execution of the deed.

On the other hand, Farris Roberts, brother of America Gay and administrator of her first husband's estate, testifies that she had nothing at the time of the purchase

and that the consideration was paid by John Gay, who had sold his interest in his father's estate at that time, although the deed therefor was not executed until some years later.

The evidence is not satisfactory on either side, but it would seem that the first conclusion of the court is sustained by the weight of the evidence, that is, that the consideration was paid by America Gay, but there is no evidence whatever to show that the deed was executed to John Gay without her consent, or that he perpetrated any fraud upon her, so that at all events he was the owner of a moiety of the land. Further than this the original deed was produced, and it contained the name of but a single grantee, to-wit, that of John Gay. It was properly executed and acknowledged on the 5th of March, 1895, and filed for record and recorded on the 22nd day of May, 1903, near the time of the death of John Gay, but as recorded the name of America Gay is also put in as a grantee. It is not shown how this came about or what it means. Nor is it intimated that there was more than one deed executed.

No other rights have intervened, and as this matter is to be determined between privies to the original parties we are of the opinion that the conveyance evidenced by the original deed is not affected by the erroneous recording thereof, whether or not the latter was the result of fraud. It follows that the appellants, as the heirs of John Gay, are the owners of the entire tract of land.

Judgment reversed for proceedings consistent with this opinion.